IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HEALTHCARE ADVOCATES, et al. | : | CIVIL ACTION |
| | : | NO. 09-5839 |
| v. | : | |
| | : | |
| AFFORDABLE HEALTHCARE OPTIONS, et al. | : | |
| | : | |

O'NEILL, J.                                                            NOVEMBER 18, 2010

MEMORANDUM

Plaintiff HealthCare Advocates filed suit against defendants Affordable Healthcare Options and its subsidiaries for breach of contract, conversion, civil conspiracy and unjust enrichment and for violations of the Lanham Act, 15 U.S.C. § 1125, and the Pennsylvania Uniform Trade Secrets Act, 12 Pa. Cons. Stat. Ann. §§ 5301-5308. After defendants failed to appear or defend the suit, I entered default judgment against them pursuant to Fed. R. Civ. P. 55(a). I currently have before me plaintiff's motion for damages and attorneys' fees. On July 13, 2010, I held a damages hearing. On August 24, 2010, plaintiff supplemented the record with invoices that AHCO had allegedly never paid. For the following reasons, I will award plaintiff $107,350 and I will deny its request for attorneys' fees.

BACKGROUND

Plaintiff is an organization that provides advice regarding health care providers and networks to individuals in need of health care services. Plaintiff claims that it helps uninsured persons obtain health care and works with providers to obtain coverage for applicants the provider otherwise would not accept. Plaintiff also seeks alternative methods to reduce the costs of health care for its clients. Plaintiff alleges that through its expertise and informational

advantages it has developed a method by which it can provide its services to individuals without requiring them to be in a health care network.

In 2006 and 2007, plaintiff contracted with AHCO to provide its services to AHCO and AHCO's clients. As part of its contractual relationship with plaintiff, AHCO requested and obtained from plaintiff proprietary information regarding plaintiff's business practices and methodologies. Plaintiff alleges that after AHCO had obtained plaintiff's trade secrets, it decided to move in-house some of the services it had previously paid plaintiff to provide. To accomplish this end, AHCO organized several new companies: Maternity Advantage, Reproductive Access Solutions, Maternity Health, NBSG, LLC and American Maternity Association. These newly formed companies improperly incorporated plaintiff's methodologies and trade secrets into their business models without plaintiff's permission and without compensating plaintiff. Plaintiff alleges that it continued to work on open cases in 2008 at AHCO's request but never received payment for its services.

STANDARD OF REVIEW

As a consequence of default judgment, "the factual allegations in the complaint, except those pertaining to damages, will be taken as true." Comdyne I v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990). A court should not merely accept as true allegations pertaining to damages. Virgin Records Am., Inc. v. Bagan, No. 08-4694, 2009 WL 2170153, at *2 (D.N.J. July 21, 2009). Instead, it must "conduct its own inquiry in order to ascertain damages with a reasonable certainty." Id. (internal quotation marks omitted). "In considering the amount of damages or the truth of an averment of evidence, the Court may make its determination by conducting a hearing or by receiving detailed affidavits from the claimant." Eastern Elec. Corp. of New Jersey v.

2

Shoemaker Const. Co., 657 F. Supp. 2d 545, 552 (E.D. Pa. 2009).

ANALYSIS

Plaintiff argues that it is entitled to damages for AHCO's wrongful conduct. It also seeks an award of attorneys' fees under the Lanham Act.

I.  Value of the Trade Secrets

Pennsylvania law requires plaintiff to prove damages with reasonable certainty. ATACS Corp. v. Trans World Commc'n, Inc., 155 F.3d 659, 669 (3d Cir. 1998). Although reasonable certainty is an imprecise term, Pennsylvania courts have held that it equates to "a rough calculation that is not 'too speculative, vague or contingent' upon some unknown factor." See id. (quoting Spang & Co. v. United States Steel Corp., 545 A.2d 861, 866 (Pa. 1988)).

"There are two basic methods for assessing damages for misappropriation of trade secrets: one, the damages sustained by the victim (the traditional common law remedy), and the other, the profits earned by the wrongdoer by the use of the misappropriated material (an equitable remedy which treats the wrongdoer as trustee ex maleficio for the victim of the wrongdoer's gains from his wrongdoing)."[1] Greenberg v. Croydon Plastics Co., Inc., 378 F. Supp. 806, 816-17 (E.D. Pa. 1974). I must decide whether plaintiff has produced sufficient evidence, under either method, to establish its damages with reasonable certainty. Plaintiff argues that the damages it sustained can be calculated in two ways based on the evidence in the record.

---

[1] All of AHCO's wrongful conduct resulted in the same harm to plaintiff–lost profits. Accordingly, proof of such lost profits is required in order to award damages for any of plaintiff's claims.

A.  The Cost of Developing the Trade Secrets Is Not an Adequate Measure of Plaintiff's Damages

First, plaintiff argues that the cost of developing the trade secrets is an adequate measure of the damages it incurred. At the damages hearing, plaintiff's president Kevin Flynn testified that it took him approximately six hundred hours to develop the proprietary information and methods that were allegedly misappropriated by AHCO. He further opined that his time was worth $450 per hour. Under this theory, then, plaintiff incurred $270,000 in damages.

Even assuming that Flynn's testimony alone is sufficient to establish the value of his time, the cost of developing the trade secrets is not a direct measure of the profits lost by plaintiff as a result of AHCO's misappropriation. In other words, the fact that the trade secrets cost $270,000 to develop does not mean that their misappropriation caused plaintiff $270,000 in lost profits. Indeed, the cost of developing the trade secrets bears no obvious relationship to the amount of profits lost as a result of the misappropriation. Flynn's testimony therefore does not establish with reasonable certainty the damages incurred by plaintiff with respect to its lost profits.

B.  The Value of the Services Plaintiff Provided to AHCO in 2006 and 2007 Is Not an Adequate Measure of the Damages Suffered by Plaintiff

Second, plaintiff contends that the profits it lost in 2008 and 2009 can be calculated by reference to the amount AHCO paid for plaintiff's services in 2006 and 2007–$257,000. I disagree. Without more evidence, it would be pure conjecture to conclude that the market value of the services plaintiff provided to AHCO in 2008 and 2009 was equivalent to the market value of the services provided in 2006 and 2007. To accept this figure, I would have to assume that the quantity and quality of work provided by plaintiff to AHCO was exactly the same during the two

4

time periods. I would also have to assume that the market forces–specifically, the supply of and the demand for plaintiff's services–did not change over the course of four years. These unfounded assumptions render plaintiff's suggested measure of damages speculative and vague. See ATACS Corp., 155 F.3d at 669. The evidence presently in the record simply does not allow me to assess the damages with respect to the lost profits incurred by plaintiff with reasonable certainty.[2] See ATACS, 155 F.3d at 669.

II.     Unpaid Invoices

Plaintiff also asks me to award damages for unpaid invoices for services rendered to AHCO for which plaintiff never received payment. In support of this request, plaintiff has produced a complete accounting of the services it provided to AHCO for which it received no payment. See Pl.'s Supplemental Br. at Ex. B. The accounting sets forth the nature of the services provided as well as the amount billed to AHCO. I find the accounting provided by plaintiff proves with reasonable certainty that plaintiff suffered damages in the amount of $107,350.

III.    Attorneys' Fees under the Lanham Act

Plaintiff lastly contends that it is entitled to attorneys' fees because AHCO's conduct constituted unfair competition in violation of section 43(a) of the Lanham Act.[3] As a preliminary

---

[2]     Alternatively, plaintiff could have attempted to establish the damages it suffered by producing proof of the profits earned by AHCO through the wrongful use of plaintiff's trade secrets. See Greenberg, 378 F. Supp. at 816-17. Plaintiff has not produced any such evidence here presumably because, due to AHCO's failure to defend the case, plaintiff has not conducted discovery and therefore has no access to necessary information. Indeed, it appears exceedingly unlikely that any such evidence will ever be available to plaintiff.

[3]     Section 43(a) has been codified at 15 U.S.C. § 1125(a). 15 U.S.C. § 1117(a) permits an award of attorneys' fees for Lanham Act violations in "exceptional cases."

matter, I must determine whether the facts alleged by plaintiff amount to a Lanham Act violation.

The Lanham Act primarily deals with trademark infringement but also seeks "to protect persons engaged in . . . commerce against unfair competition." Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23, 28 (2003) (citing 15 U.S.C. § 1127). Section 43(a) provides:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which-
>
> > (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
> >
> > (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

Plaintiff pursues its Lanham Act claim under a "reverse passing off" theory. Reverse passing off is a type of unfair competition covered by the Act that occurs when the producer of a good or service misrepresents someone else's good or service as his own.[4] See Williams v. Curtiss-Wright Corp., 691 F.2d 168, 172 (3d Cir. 1982). A critical element of a reverse passing

---

[4] The Dastar Court illustrated the reverse passing off theory of liability by noting that the Coca-Cola Company would be liable under a reversing passing off theory if it sold Pepsi-Cola in a Coca-Cola bottle. See Dastar, 539 U.S. at 32.

off claim is misrepresentation of the "origin of goods." McArdle v. Mattel Inc., 456 F. Supp. 2d 769, 783 (E.D. Tex. 2006). The term "origin of goods" refers to "the producer of the tangible goods offered for sale in the marketplace." See Dastar, 539 U.S. at 31. The term does not refer to the person or entity that developed the intellectual property, idea or concept the goods may contain. See id. at 37. I must decide whether plaintiff's complaint alleges that Maternity Advantage misrepresented the origin of the tangible services it provided or that Maternity Advantage misrepresented the origin of the underlying intellectual property contained within those services. The former claim would constitute reverse passing off and be protected by section 43(a); the latter would not. See id.

My review of plaintiff's complaint reveals that its Lanham Act arguments mirror those rejected by the Supreme Court in Dastar. See 539 U.S. at 37. Plaintiff's complaint alleges that Maternity Advantage used plaintiff's trade secrets to start and operate Maternity Advantage and other similar health care organizations.[5] See Compl. at ¶ 86. As part of the misappropriation of plaintiff's trade secrets, Maternity Advantage used plaintiff's trade secrets to provide services to its members. See id. at ¶ 87-88. Plaintiff concludes such use caused confusion among Maternity Advantage's members as to the true owner of the trade secrets and thereby violated the Lanham Act. See id. at ¶ 89.

Importantly, however, plaintiff does not argue that Maternity Advantage repackaged

---

[5] Plaintiff alleges AHCO formed Maternity Advantage as a means of misappropriating its trade secrets. See Compl. at ¶ 43. Plaintiff further alleges that AHCO later formed Reproductive Access Solutions, Maternity Health, NBSG, LLC and American Maternity Association to misappropriate plaintiff's trade secrets. See id. Plaintiff has named all defendants in his complaint and seeks recovery under the Lanham Act against all defendants. For the ease of discussion, any reference to Maternity Advantage will include the spin-off companies that AHCO created.

plaintiff's services and passed them off as its own. While the tangible service that Maternity Advantage sold in the marketplace may have evolved out of plaintiff's methods, the intellectual property underlying a good or service does not fall within the Supreme Court's construction of "goods" and therefore is not entitled to protection under the Lanham Act. See id. at 32 (stating that the term origin of goods does not include "the person or entity that originated the ideas or communications that the 'goods' embody or contain"); Maule v. Philadelphia Media Holdings, LLC, 710 F. Supp. 2d 511, 518-19 (E.D. Pa. 2008) (declining to find Lanham Act violation against defendant newspaper company for use of plaintiff's photographs because "while [defendant] may not have been the originator of the photographs contained in its newspaper, it was the originator of the newspaper itself, the actual good being offered for sale to the public"). Plaintiff's allegations here are limited to misrepresentation of the underlying methods behind the services Maternity Advantage offered. Accordingly, plaintiff has not shown Maternity Advantage's conduct violated section 43(a) of the Lanham Act.

As plaintiff has not demonstrated a Lanham Act violation, it is not eligible for an award of attorneys' fees. See 15 U.S.C. § 1117(a). Therefore, I will deny its request for fees.

## CONCLUSION

I will grant plaintiff's request for damages on its unpaid invoices claim. In all other respects, I will deny its requests.

An appropriate Order follows.